Chapman Drug Co. v. Southern Ice Cream, Ice & Milk Co.

(Decided June 23, 1933.)

LOW & BRYANT for appellant.

N. J. WELLER and E. N. INGRAM for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Reversing.

The Chapman Drug Company, a Tennessee corporation, brought this action against the Southern Ice Cream, Ice & Milk Company, a Kentucky corporation, to recover on a note for $75, dated April 23, 1930, and also to recover on an account for services rendered the plaintiff, amounting to $182.86. The defendant by its answer and counterclaim admitted the execution of the note, but denied that the services sued for were rendered at its request or that it agreed to pay for them or that the amount charged was reasonable. It alleged that on April 23, 1930, it purchased from plaintiffs a refrigerating machine at the price of $300; $225 was then paid and the note executed for the balance of the price; that the plaintiff represented to the defendant that the machine was in first-class condition and would give service in the manufacture of ice, sufficient to manufacture ten tons of ice a day; that the defendant, relying upon this representation, bought the machine and but for the same would not have bought it; that it paid $143.75 to install the machine, but when installed it would not work and would not produce any refrigeration and was without value as a refrigerating machine; that the labor and expense in trying to get the machine to work after it was installed amounted to $167.47, and it also, by reason of the worthlessness of the machine, was unable to make any ice in that time, in all to his damage in the sum of $750, for all of which it prayed judgment.

The plaintiff filed a reply alleging that the machine was sold under a written contract, filed with the reply, which among other things contained these provisions:

"9. The use of the property described herein, or any portion thereof, for a period of five days

constitutes an acceptance of the same as complying with all the terms and specifications of this contract and all claims for damages, errors or shortage not filed within that time are hereby waived."

"11. This contract is not subject to cancellation.

"Description: Only 10 ton capacity united compressor, without motor."

The defendant thereupon amended its answer admitting the written contract and alleged that the machine was not installed until about June 20, 1930, and the defendant then attempted to operate it and was unable to get any refrigeration whatever and called the plaintiff by telephone at its office in Knoxville, telling them the trouble and asking them to send a man there to correct it. Plaintiff sent one of its engineers to Pineville, who worked on the machine for a day or so and announced it ready for operation; that immediately the defendant tried again to operate the machine and was unable to produce any refrigeration, and its officers went to Knoxville and went over the matter with the plaintiff telling it the condition and demanding back the money they had paid on the machine; that the plaintiff's officers said: "We will not pay back any money, but we will guarantee to fix the machine so that it will produce 5 tons of ice a day." Its officers replied: "If you will do that we will be satisfied and will accept the machine." The plaintiff then sent other men to work on the machine, but after they left it produced no refrigeration, and the defendant again called up the Knoxville office and told them the condition of the refrigerator, and the plaintiff again sent other men to work on the machine, but they did not make it work and it was worthless, and the defendants set it aside and purchased another machine in its place. The plaintiff's reply to the amended answer contained the following allegation:

"The plaintiff further states that the said goods and machinery was a ten-ton capacity United compressor without a motor and was in good condition and capable of manufacturing five tons of ice per day with success, which is the limit capacity for such rated capacity and the said contract did not contain any warranty and the goods and machinery which the plaintiff delivered to the defendant was

the exact machinery provided for in said contract and complied with said contract in all respects and was capable of doing all the work required and exacted by such machinery of such rated capacity.''

The case came on for trial before a jury; the proof for the defendant showed that the machine gave no refrigeration and was worthless as a refrigerating machine. It also showed the facts above stated as to the notice to the plaintiff of the condition of things and what was done in an effort to make the machine work.

The plaintiff introduced proof tending to show that the trouble with the machine was due to the fact that it was overloaded by being attached to a 10-ton ice cream tank, which was operated by the defendant. On the other hand, the proof for the defendant was to the effect that the cylinders of the machine were worn and thus permitted the gas to escape and did not give the necessary pressure upon the pipes to make it operate as a refrigerating machine. At the conclusion of the evidence, the court instructed the jury to return a verdict for the plaintiff in the sum of $280, the amount sued for. It also told the jury that if the defendant failed to notify the plaintiff of the defects in the machine, they should find for the plaintiff on the counterclaim of the defendant. On motion of the defendant the court gave the jury this instruction:

"If the jury believe from the evidence that the defendant properly installed the ice machine mentioned in the evidence and in good faith thereafter made an effort to try out and test said machine and said machine by reason of any defect therein failed to produce ten tons of refrigeration per day, or any other amount of refrigeration, in the effort to manufacture ice, the jury will find for the defendant on its counterclaim.

"(a) If the jury find for the defendant under the above instructions, they will find $225.00 with interest thereon from April 23, 1930, until Jan. 13, 1932, amounting in all to $248.62.

"(b) Also the sum of $167.47, the cost of freight and installation of said machine.

"(c) Also the damage, if any, you may believe from the evidence defendant sustained by reason of

the loss of the use of said machine from June 20, 1930, to Sept. 4, 1930, not to exceed the sum of $750.00, the amount sued for in the counterclaim.''

The jury found for the plaintiff in the sum of $280, and also found for the defendant on the counterclaim, $248.62 and $167.47, amounting to $416.09. The court entered judgments on the verdicts and refused a new trial. The plaintiff moves for an appeal from this judgment against it on the counterclaim.

Technically speaking it is doubtful if defendant's pleading was sufficient to constitute a valid defense of fraud on the part of plaintiff in the sale of the compressor, since the allegation is that ''plaintiff represented to this defendant that said machine had been overhauled and was in first class condition and would give the service that this defendant needed and required in the manufacture of ice; that said machine would give refrigeration sufficient to manufacture ten tons of ice per day.'' It is not alleged, except possibly inferentially, that such representations if made were false, and it was not alleged in any of defendant's pleadings that defendant attached the compressor to other proper machinery and adjusted it according to the scientific principle for making ice; but only in a general way that it installed the compressor and it would produce no refrigeration. Its proof showed, as well as did that of plaintiff, that the compressor was attached to a ten-ton ice tank (and which is a necessary part of its correct installation) with double the ice-making capacity of the compressor, and which, according to the testimony, was an overloading of the latter and decreased its power to produce refrigeration, even if it had been in the most perfect order, and some of plaintiff's witnesses stated that they informed defendant of that fact; and which testimony we do not find to be denied.

Defendant's pleadings nowhere charged a warranty, but were it otherwise, then the only one that could possibly be relied on under such an averment would be an implied one, since the written contract contains no express one. In order for a warranty to be implied in cases of this kind, it must appear that the article sold was intended for a specific purpose, and that upon trial it would not meet that purpose. The particular purpose in this case, as contended by defendant, was to manufacture ice with the compressor bought of plain-

tiff, and in order to do that it would be incumbent on defendant to so install, including proper attachments, the compressor in the manner that it was necessary to be done in order to obtain efficient service and the accomplishment of the purpose intended. Clearly, this was not done under the evidence, and it is even admitted by defendant's witnesses, and abundantly established by those for plaintiff, that a ten-ton compressor can manufacture only about 50 per cent. of that amount of ice and then only when it is scientifically and properly installed and connected with the proper assisting apparatus. If, however, it could be said that defendants' pleading was sufficient to create an implied warranty, then its breach was not established because the proper test of the machine was not made for the reason we have stated.

Recent cases dealing with the questions of warranties and false representations in suits based on written contracts are Vandiver v. B. B. Wilson & Co., 244 Ky. 601, 51 S. W. (2d) 899, and Pace Construction Co. v. Brandeis Machinery & Supply Co., 239 Ky. 693, 40 S. W. (2d) 268. We therefore conclude, under the conditions of the pleading and proof as appearing in the record before us, that plaintiff's motion for a peremptory instruction in its favor on defendant's counterclaim should have been sustained and the jury instructed accordingly. However, if there should be a modification of the pleadings upon a return of the case so as to conform to defendant's contention and there should be sustaining proof, then the case on the counterclaim should be submitted by an instruction authorizing a recovery for the difference between the value of the compressor if it had been as represented or warranted (if either be shown), and its value as demonstrated by its proper testing, together with any special damages sustained by defendant incurred in its proper installation and in its efforts to repair and restore it.

For the reasons stated the judgment against plaintiff on defendant's counterclaim is reversed, with directions to set it aside and to sustain its motion for a new trial and for proceedings consistent herewith.