# Henry Porter & Co., Inc., v. Lacy.

(Decided May 18, 1937.)

M. F. PATRICK and D. G. SUBLETT for appellant.

H. H. RAMEY and E. R. COOPER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

Henry Porter & Co., a corporation, instituted this

action against A. D. Lacy to recover a balance of $336 alleged to be due for electric refrigerating equipment installed by it in display cases in Lacy's place of business at Salyersville.

It is alleged in the petition that refrigerating equipment, consisting of coils, compressors, motors, etc., was sold, delivered, and installed under a written contract made between plaintiff and defendant at the agreed price of $517.90, $91.90 of which was payable in cash upon execution of the contract and the balance of $426 payable in monthly installments of $18 each, with the provision that in the default of payment of any one or more of the monthly installments, the entire balance became due and payable; that five of the installments had been paid, but that defendant had defaulted and paid no further installments.

By answer and counterclaim, defendant admitted that plaintiff sold and delivered to him the equipment described in the petition, but alleged that as a part of the contract plaintiff was to install the equipment in a building where he, at the time, operated a grocery store, for the operation of meat and display cases, and alleged that the equipment was not installed in a way or manner as would enable him to operate the meat and display cases. He also denied that he owed the alleged balance or any sum under the contract. He further alleged that it was specifically agreed in the contract that plaintiff was to install the equipment and that it was contemplated by the contract that the equipment would be so installed to enable him to preserve and keep fresh meats and vegetables in the display cases and the contract impliedly warranted the equipment would do this, but that it was either installed in such a manner as would not permit him to do this or the materials sold were of such defective character as would not enable him to operate the refrigerator cases for the purpose for which they were bought and which purpose was known to plaintiff; that because of the failure of the equipment to properly cool and refrigerate as was contemplated by the contract, large quantities of meat which he placed in the display cases, believing in good faith that same would be preserved by the electric refrigeration generated by the equipment, spoiled; that he sold spoiled meats to his customers and thereby lost his trade and was forced to sell his business at a sacrifice of more

than $1,000 and he was damaged by the failure of plaintiff to comply with the express and implied provision of the contract in such sum for which he asked judgment.

A reply traversing the affirmative allegations of the answer and counterclaim completed the issues. The jury found for defendant on his counterclaim in the sum of $350 and plaintiff is here on motion for appeal.

The only ground urged for reversal is that the court should have sustained appellant's motion for a directed verdict at the close of the evidence because there was no evidence to support appellee's defense. In view of the state of the record, this is about the only ground that could be relied on unless it would be some matters in the admission or rejection of evidence. There was no demurrer to the answer or counterclaim, nor a motion to strike any portion of it, neither was there an objection or exception to any of the instructions given and appellant offered no instructions.

In the contract appellant agreed to service the equipment for ninety days without charge and to furnish any new parts or portion for replacement of any which in one year from date of delivery showed defective material or workmanship except there was no guarantee of painted lining. The contract further recited that there was no understanding, agreement, representation, or warranty, expressed or implied, not specified therein respecting the contract or goods sold. There was no warranty in the contract that the refrigerating equipment was suitable for the purpose for which it was sold or purchased, but it is admitted that appellant knew the purpose for which the equipment was to be used.

Subsection 1 of section 2651b-15, Kentucky Statutes, which is a part of our Uniform Sales Act, provides:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Appellee did not testify, but introduced as a witness his wife who testified that she acted as his agent in

conducting the grocery business. It is undisputed that the equipment operated properly and satisfactorily for over four months and the first five monthly installments were paid without question, although Mrs. Lacy testified that the fifth installment was paid after some meats and butter in the display cases took on a bad taste and odor. She further testified that a number of customers complained of odors and taste of meats and some of them returned it. She was permitted to state that after installing the refrigeration equipment they built up a profitable trade, but because of offensive odors and taste of meats, they lost their customers and trade; also, that on three different occasions they were compelled to throw away considerable quantities of meat. She gave as her opinion that the odor and taste of the meat was due to gas escaping in the display cases. Neither she nor any other witness testified that the refrigerating equipment did not maintain proper temperature in the cases. Appellee introduced a number of witnesses who testified that they purchased meat from his place that had a bad odor, some expressing the opinion that it was tainted. Mrs. Lacy testified that she made complaint to appellant and that men were sent to examine the equipment and to correct any defects found.

Appellant introduced four witnesses who had had long experience in the installation and operation of electric refrigerating equipment and most of them were graduates in that line. They testified that upon every examination and inspection they found the equipment working properly and maintaining proper temperature in the cases. They applied every known and approved test for determining whether gas or chemicals were escaping from the coils and found no evidence of such a condition. One man testified that he found a broken switch which he replaced. All of these examinations were made more than four months after the equipment had been installed. The evidence shows that appellee had sold out his business, including the equipment in controversy to another, and it was being maintained and operated by the latter. The men who had been sent out by appellant to inspect the equipment testified that if fresh or warm meats were placed in a refrigerating case with cold meats, the cold meats would take on an odor from the fresh meats or that any meats and butter in such a case would take on any odors in that case, as

from fish, onions, etc., and that, of course, is a matter of common knowledge by persons who have electric or ice refrigerators. It is likewise a matter of common knowledge as well as a matter of proof that in order to properly preserve meats, butter, etc., in a refrigerator, the refrigerator must be kept in a clean, sanitary condition and will not function without electric current. The evidence shows that this equipment was automatic in that it kicked on and off when certain temperatures were reached in the cases, but the evidence is not clear whether it defrosted automatically or whether it was necessary to turn off the current to defrost it. There is a total absence of evidence that appellee properly cared for and operated his display cases or that proper electric current was at all times kept on to operate the refrigerating equipment. There is no evidence that the equipment at any time failed to produce proper temperatures in the cases and the claim that the meats were tainted by any gas fumes from the coils is purely surmise and speculation.

In order to avoid his obligation or to recover for breach of implied warranty, it was essential for appellee to show that his display cases and the refrigerating equipment were properly maintained and operated by him. See Chapman Drug Co. v. Southern Ice Cream, etc., Co., 250 Ky. 80, 61 S. W. (2d) 1041. It is our conclusion from the record as a whole that there was no evidence of probative and substantial character to sustain the allegations of appellee's answer and counterclaim. However, since there may be another trial of the case, we deem it proper to suggest that the measure of damages for implied breach of warranty is properly set out in subsections 5 and 6 of section 2651b-69, Kentucky Statutes. And in this connection it may be said that in the circumstances shown the alleged loss of business and profits was too remote to constitute an item of special damages for which recovery might be had.

Since the evidence shows as above indicated that the equipment was automatic in operation and it is undisputed that it did properly function for four months or over, and there is nothing in the pleading concerning automatic operation of the refrigerating equipment, no reference should have been made to that question in the instructions. If the equipment was expressly or impliedly warranted to be automatic in operation and it

failed to function in that particular when supplied with electricity and properly maintained, then that would be a question to be considered by a jury in determining whether it was reasonably suited for the purpose for which it was sold to appellee.

For reasons indicated, the motion for appeal is sustained and the judgment reversed for proceedings consistent with this opinion.